CASE 69.—ACTION BY WILLIE SKIDMORE AND OTHERS AGAINST THE CUMBERLAND VALLEY LAND CO. AND OTHERS, INVOLVING INFANTS' INTEREST IN LAND.—October 9.

## Skidmore, etc., v. Cumberland Valley Land Co., etc.

Appeal from Harlan Circuit Court.

M. J. Moss, Circuit Judge.

From a compromise judgment the guardian ad litem of the infants appeal—Affirmed.

Guardian and Ward—Care of Ward's Estate—Compromise—Conveyance of Land.—Under Ky. Stats., 1903, section 2030, providing that a guardian, with leave of the court, may compromise any controversy concerning the lands of his ward, when the interest of the ward will be subserved thereby, where a suit to determine the interest of wards is compromised, the court has authority to order a conveyance of the interest

conceded by the compromise to be in the wards and to be conveyed for a money consideration under its terms.

G. A. EVERSOLE, guardian ad litem for appellants.

We contend that section 2030 of the Kentucky Statutes repeals the power given in the General Statutes to convey the land of their wards by compromise, if indeed that power ever existed.

### AUTHORITIES CITED.

Civil Code, sections 489, 490 and 491; Ky. Stats., sections 2034 and 2039; Walker v. Smyser, 80 Ky., 620; Henning v. Harrison, 13 Bush, 723; Meddes v. Bull, 13 Ky. Law Rep., 767; Goldsmith v. Heiatt, 28 Ky. Law Rep., 741; Wormack v. Loar, 11 Ky. Law Rep., 6; Bill v. Burgess, 15 Ky. Law Rep., 41.

Sampson & Sampson attorneys for appellee.

By section 2030, Ky. Stats., a guardian is empowered to "settle or compromise any controversy concerning the lands of his ward when the interest of the ward will be subserved thereby." This is to be done with leave of the court. There is no limit as to how the same is to be made or the terms of such settlement.

If with leave of the court he can settle he must also have power to consummate that settlement. If it be necessary in carrying it out to convey lands of the infant there must be some authority to do that and vest the title.

This is not a proceeding to sell the infants land, but to settle a controversy whereby the infants get, instead of their lands, a sum of money which is shown to be its full value. Walker v. Smyser, 80 Ky., 628.

## OPINION OF THE COURT BY JUDGE BARKER— Affirming.

There was pending in the Harlan circuit court a suit between Mary Jane Skidmore and the Cumberland Valley Land Company, in which was involved, among other things, the validity of the former's claim to own an undivided interest in a tract of 600 acres of land in Harlan county, Ky. There were

vol. 126—37

other issues in the case, such as claims of damages
for trespass in cutting trees, etc., but the main issue,
so far as the case in hand is concerned, was her claim
to be the owner of an undivided interest in the land.
There can be no question that the litigation was gen-
uine and the controversy a serious one to her.   Dur-
ing the pendency of this litigation, she died, intestate,
leaving four children, the infant appellants, Willie
Skidmore, Robert Skidmore, Victor Skidmore, and
Theodore Skidmore, her only heirs at law.   After-
wards J. F. Skidmore, the husband of Mary Jane
Skidmore, was appointed and qualified as guardian of
his children, the appellants, and the case was regu-
larly revived in their names as heirs at law of their
mother.   The litigation then continued for some time.
Afterwards the father and guardian of the infants
entered into an agreement of compromise with the
appellee company, by which it was agreed that the
infants were entitled, so far as their rights in the land
were concerned, to the claim as set up and sought
to be maintained by their mother, Mary Jane Skid-
more, and that they should receive this interest in
money; the land being valued at $15 per acre.   We do
not set out the terms of the compromise minutely; it
being conceded by the guardian ad litem, who prose-
cutes this appeal, that it is a fair one so far as the
infants are concerned, and that they, under its terms,
receive the full market value of the land claimed by
their mother if it was free from any controversy
whatever.   After this compromise was agreed upon,
the guardian, and the children by him, filed a petition
in the case they were litigating with the appellee,
setting forth the terms of the compromise, that the
issues involved were many and doubtful, and that
their best interest would be subserved by the compro-

mise in question being carried into effect through the judgment of the court. Some evidence was taken on the merits of the compromise, and, the case having been regularly submitted, a judgment was entered approving its terms, and directing the commissioner of the court to convey whatever interest the infant appellants had in the land to the appellee. As said before, the guardians ad litem, who prosecutes this action, does not question the merits of the compromise, but challenges the jurisdiction of the court to carry it into effect as was done in this case. Section 2030, Ky. St. 1903, is as follows: "Guardian shall discharge the liabilities of the ward for the debts of the ancestor out of his personal estate, and when the personal estate, with the rents of the real estate is not sufficient therefor, he may, by petition to a court of his county having equity jurisdiction, obtain leave to sell land for that purpose. He shall also receive and sue for the debts and demands owing to the ward, defend actions against him, and, with leave of the court, may compound a debt or demand, or settle or compromise any controversy concerning the lands of his ward when the interest of the ward will be subserved thereby." It will be observed that the language of the foregoing statute, in so far as it relates to the subject in hand, authorizes, the guardian, with the approval of the chancellor, to "settle or compromise any controversy concerning the lands of his ward when the interest of the ward will be subserved thereby." This is a very broad power, and is conferred upon the guardian to enable him thoroughly to protect the interest of his ward. The protection of the infant against the disloyalty or negligence of the guardian is contained in the provision which requires the approval of the chancellor before the

compromise can be carried into effect. Now, it is obvious that, in order to settle or compromise all controversies concerning the lands of infants, it must necessarily often happen, as in the case at bar, that the claim of the infant to the land in question must be released and conveyed to the opposing claimant, and, when this happens, the statute would be entirely nullified if the court did not have a right to carry the compromise into effect by a conveyance of whatever claim the terms of the compromise conceded to the infants. This is a most beneficient statute, and but for it or some similar enactment, the interest of infant claimants would often be swallowed up and lost in the precarious chances of litigation. We do not think the absence from the statute of words expressly authorizing a conveyance to be made of the infant's property militates against the conclusion at which we have arrived. Where a power is expressly and definitely given, it embraces by implication all powers which are necessary to the effectual execution of that expressly given. Now, while the statute under consideration does not say, in express language, that the guardian, or the chancellor through his commissioner, may convey the interest of an infant in land involved in litigation and which is the subject of compromise, the power to compromise an adverse claim is expressly and certainly given; and we think the power to convey, in order to effectuate the compromise, is fairly implied in the authority to make it. Any other construction than this must often jeopardize the substantial interest of infants in lands involved in litigation. The case at bar is a fair sample of what might happen in such cases if the position of the guardian ad litem is sound. By the compromise made, the infant appellants receive sub-

stantially everything their mother claimed, but take it in money, instead of the actual land. If the litigation is to proceed without compromise, it may peradventure happen that an adverse decision to their interest would be rendered, and in the end they would receive nothing. Certainly it is to their material and substantial interest that this compromise should be made. It is one that any prudent man acting for himself would make in his own behalf, for it eliminates all chance of a total loss by an adverse judgment.

It is inconceivable how the statute could be effectually enforced if there is not implied in the power to compromise an adverse claim in land the power to convey the interest of the infant therein. This proceeding is not under chapter 14, tit. 10, Civ. Code Prac., relative to the sale of the land of infants. There it must be conceded the power to sell and convey the estate of an infant in land must be expressly given in order to clothe the court with jurisdiction to sell. But here is a case where the estate of the infants is denied and is a subject of active and adverse litigation. That they have any estate at all in the land is a question to be determined on final judgment, and is at least doubtful. These facts bring it within the purview of the statute above quoted; and this statute, as we have said above authorizes the release or conveyance by deed of their interest in the subject of the controversy in order that a wholesome and beneficial compromise may be effectuated.

Every interest of the infants seems to have been safeguarded in the proceedings leading up to the judgment approving the compromise and ordering a conveyance by the commissioner of the interest of

the infants in the land in question, and we are therefore of opinion that the judgment should be affirmed, and it is so ordered.